UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————
                                                    )
IN RE APPLICATION OF USA PURSUANT    )        ML No: 20-1254
TO 18 U.S.C. § 3512 FOR ORDER FOR         )
COMMISSIONER'S APPOINTMENT FOR        )
MONEY LAUNDERING INVESTIGATION       )
                                                    )
———————————————————————)

*Reference:*        *DOJ Ref. # CRM-182-73974*

**URGENT**[1] APPLICATION OF THE UNITED STATES FOR AN ORDER
FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel,

respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. § 3512,

appointing the undersigned attorney, Angela S. George, Trial Attorney, Office of International

Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently

designated by the Office of International Affairs), as a commissioner to collect evidence and to

take such other action as is necessary to execute this and any subsequent, supplemental requests

for assistance with the above-captioned criminal matter from Ecuador.  In support of this

application, the United States asserts:

RELEVANT FACTS

1.        The Central Authority of  Ecuador, the State Attorney General's Office, submitted

a request for assistance (the Request) to the United States, pursuant to the Inter-American

---

[1] Ecuadorian authorities notified the Office of International Affairs (OIA) that its criminal
investigation expires on October 1, 2020.  Therefore, undersigned counsel respectfully requests
that the Court review and issue an order on an expedited basis.

Convention on Mutual Assistance in Criminal Matters, Aug. 27, 1992 – Feb. 28, 2006, S. Treaty

Doc. No. 105-25 (the Convention).

2.      As stated in the Request, the Specialized Anti-Money Laundering Unit, in

Ecuador, is investigating and prosecuting Esteban Sachs Lizarzaburo (Sachs), Marina Vedani de

la Torre (Torre), Juan Xavier Ribas Domenech (Ribas), Jose Luis Romo Rosales Castillo

(Rosales), Veronica Priscila Haro Herrera (Haro), Felipe Moncaleano Botero (Moncaleano),

CONTROLASEG S.A. (also known as Seguros Sucre S.A.) (Seguros), and Casa Mobeloft S.A.

(Casa Mobeloft) (collectively, the targets), for money laundering, which occurred between in or

about 2013 through 2018, in violation of the criminal law of Ecuador, specifically, Article 317 of

the Comprehensive Organic Criminal Code.  Under the Convention, the United States is

obligated to assist in response to the Request.

3.      According to Ecuadorian authorities, they received a police report dated April 30,

2020 (police report), in which it is alleged that Seguros, a state-owned insurance company in

Ecuador, along with its main shareholder, Corporacion Financiera Nacional (CFN), a public

financial institution, unlawfully benefitted from several business contracts from 2013 through

2018.  Pursuant to an official order issued by the president, Ecuadorian government entities were

required to procure insurance contracts through Seguros.

4.      The Ecuadorian Ministry of Defense obtained insurance policies through Seguros

to provide insurance coverage for the Armed Forces of Ecuador.  Purportedly, Seguros, the

primary provider of the insurance policies, subrogated the insurance policies through a

reinsurance company that maintains several offices in the United States.

5.      Ribas, Principal Director and President of Seguros from October 2013 to June

2016, and former advisor to former Ecuadorian President Rafael Correa Delgado from 2013

through 2017, and Rosales, General Manager of Seguros from September 2013 to July 2017, allegedly received bribes for the provision of insurance and reinsurance contracts through Seguros.  Sachs served as a liaison between Seguros and the Ecuadorian Ministry of Defense, facilitating the execution of the insurance contracts.  According to Ecuadorian authorities, the financial information in the police report revealed that Ribas and Rosales funneled monies generated from the bribes, at least approximately 3.6 million USD, through bank accounts and shell companies in the United States that were created and/or managed by their closest family members.  These funds were transferred from bank accounts in the United States to bank accounts in Ecuador for the financial benefit of Ribas, Rosales, and the other targets.

6.      Torre, an Ecuadorian citizen and Ribas's wife, holds a managerial position and/or shareholder status in Derecha, LLC, Range Ventures, LLC, Verisa Holdings, and Vedani Mobili, Inc. (Mobili), entities domiciled in the United States, and Euro Muebles S.A. (Euro Muebles) and Casa Mobeloft, entities domiciled in Ecuador.  Further, information obtained by Ecuadorian authorities from the Ecuadorian Superintendence of Companies revealed that Euro Muebles and Casa Mobeloft purportedly manufacture furniture for domestic, commercial, and industrial use. During the time period of the investigation, Ecuadorian authorities learned through the Ecuadorian financial system that Torre previously reported she earned approximately 135,019 USD in income.  However, she did not report this income as being related to commercial activity or employee wages earned in Ecuador.  Based upon bank records obtained from Banco Bolivariano of Ecuador (BBE), Ecuadorian authorities discovered that Torre, from 2013 to 2016, received funds, approximately 451,923 USD, in a BBE bank account held in the name of Casa Mobeloft.  These funds were transferred from bank account number xxxxxx1331, at J.P. Morgan Chase Bank, N.A. (Chase Bank) in the United States, held in the name of Torre.

7.     Additionally, from 2014 through 2016, the financial evidence revealed that approximately 438,958 USD worth of transfers were made from Casa Mobeloft to Torre.

8.     Ecuadorian authorities learned that Rosales acquired real and personal property for approximately 1,276,969 USD.  The true origin of the funds used to purchase the property is unknown and is incompatible with Rosales's declared income in the Ecuadorian financial system.  Further, Ecuadorian authorities discovered unusual and unexplained cash deposits made by Haro, Rosales's wife, into a bank account, account number xxxxx0851, in the name of Rosales at Chase Bank, in the United States.  The cash deposits were later returned to Haro via checks drawn on Rosales's account at Chase Bank.

9.     On May 20, 2020, Ecuadorian authorities seized cell phones, laptops, storage devices, and other evidence from Rosales's and Haro's residence in Ecuador.  Evidence from these devices revealed conversations with Sachs about the Ecuadorian Armed Forces insurance and reinsurance contracts.  Further, there were conversations in which Moncaleano's participation in the bribery scheme was discussed as well as meetings with the other targets.

10.     From financial information included in the police report,  Ecuadorian authorities discovered money transfers sent from the United States to Ecuador through other bank accounts in the United States at Citibank, N.A. (Citibank) and Bank of America, N.A. (BOA) from 2013 through 2018.  These transfers were made from Citibank account numbers xxxxxx7361, held in the names of Torre and Mobili, and xxxxxx9510, held in the name of Ribas, and BOA account number xxxxxxxx4567, held in the name of Rosales.

11.     To further the investigation, Ecuadorian authorities have asked U.S. authorities to provide bank records pertaining to Chase Bank account numbers xxxxx1331 and xxxxx0851; Citibank account numbers xxxxxx7361 and xxxxxx9510; and BOA account number

xxxxxxxx4567.

LEGAL BACKGROUND

12.     A treaty[2] constitutes the law of the land.  U.S. Const. art. VI, cl. 2.  The

provisions of a treaty have equal footing with acts of Congress and are binding on the courts.

See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103

(1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001).  The provisions of a

treaty should be construed liberally "to give effect to the purpose which animates it."  United

States v. Stuart, 489 U.S. 353 (386) (1989) (internal quotations marks omitted).  To the extent

that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty

supersedes the statute.  Zschernig v. Miller, 389 U.S. 429, 440-41 (1968). A multilateral

convention is a treaty under U.S. law.

13.     The United States and Ecuador entered into the Convention to promote more

effective judicial cooperation and assistance between the parties in criminal matters.  See

Convention pmbl. and Art. 1.  The Convention obligates each party, upon request, to provide

assistance to the other in criminal investigations, prosecutions, and related proceedings,

including assistance in serving documents, obtaining testimony, statements, and records, and

executing searches and seizures.  Article 7.  In addition, 18 U.S.C. § 3512, authorizes federal

courts to use compulsory measures to further the execution of such requests.

14.     When executing a treaty or non-treaty request for assistance from a foreign

authority, an attorney for the government may file an application to obtain any requisite court

orders under 18 U.S.C. § 3512.  This section authorizes a federal court to issue such orders and

provides in pertinent part:

---

[2] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

eorem

Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

\*                    \*                    \*

[A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.

\*                    \*                    \*

The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

15.     Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme."  155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[3]  This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders that are

---

[3] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities.  See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782).  When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations.  See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

necessary to execute a foreign request.

16.     An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs[4] has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[5]  Upon such a duly authorized application, Section 3512 authorizes a federal judge[6] to issue "such orders as may be necessary to execute [the] request," including:  (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things.  *See* 18 U.S.C. § 3512(a)(1)--(b)(1).  In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence.  18 U.S.C. § 3512(a)(1).

17.     Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents.  The appointed person has authority to: (1) issue an order requiring a person to appear and/or produce documents or other things; (2) administer any necessary oaths; and (3) take testimony or statements and receive documents or other things.  18 U.S.C. § 3512(b)(2).  In ordering a person to appear and/or produce documents

---

[4] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  *See* 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

[5] "Section 3512 can be invoked only when authorized by OIA. . . .  Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA."  Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

[6] The term "federal judge" includes a magistrate judge.  See 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena."  Any such subpoena may be served or executed anywhere in the United States.  18 U.S.C. § 3512(f).  A sample "Commissioner's Subpoena" is included as Attachment A.

<u>REQUEST FOR ORDER</u>

18.     The Office of International Affairs has reviewed and authorized the Request and is executing the Request itself.  Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512.  In addition, the Request was submitted by an appropriate "foreign authority," the State Attorney General's Office, the designated Central Authority in Ecuador, and seeks assistance in the investigation and prosecution of money laundering – a criminal offense in Ecuador.  The requested Order is necessary to execute the Request, and the assistance requested, <u>i.e.</u>, the production of bank records, falls squarely within that contemplated by Section 3512 and the Convention.  Finally, this application was properly filed in the District of Columbia.

19.     This application is being made *ex parte*, consistent with U.S. practice in its domestic criminal matters.

20.     When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Convention authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions.  Because subpoenas utilized in U.S. criminal proceedings (<u>i.e.</u>, grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (<u>i.e.</u>, no notice to targets or defendants), orders and commissioner subpoenas issued in execution of a foreign request pursuant to Section 3512

likewise should require no notice other than to the recipients.  This is true even if the Requesting

State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§

3401 et seq., including its notice provisions, does not apply to the execution of foreign requests

for legal assistance.  Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert.

denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong,

821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the

Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987).

Accordingly, this Court should authorize a commissioner to collect the evidence requested

without notice to any person(s) or entity(ies) other than the recipient(s) of any given

commissioner subpoena.

21.    Therefore, the United States respectfully requests that this Court issue the

attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Angela S.

George, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently

designated by the Office of International Affairs) as a commissioner, authorizing the undersigned

to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to

collect the evidence necessary to execute any pending request for assistance and any subsequent,

supplemental requests in connection with the same matter, in a manner consistent with the

intended use of the evidence.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By:    _____
Angela S. George
Trial Attorney
D.C. Bar Number 470567
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W.
Washington, D.C. 20530
(202) 514-4653
Angela.George@usdoj.gov

**ATTACHMENT A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

IN RE APPLICATION OF USA PURSUANT          )
TO 18 U.S.C. § 3512 FOR ORDER FOR          )
COMMISSIONER'S APPOINTMENT FOR             )
_____           )
                                           )
_____)

*Reference:*  _____
***(Please repeat when responding.)***

<u>COMMISSIONER'S SUBPOENA</u>

TO: _____

I, Commissioner _____, Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice, acting pursuant to 18 U.S.C. § 3512, and this Court's Order signed on _____, for the purpose of rendering assistance to Ecuador, command that you provide the following documents regarding (an) alleged violation(s) of the laws of Ecuador; specifically, _____, in violation of Article _____ of the Ecuadorian Criminal Code.

Provide records to International Affairs Specialist _____ by emailing them to _____ or by mailing via FedEx either a paper copy of the records or any commonly used digital storage device loaded with the files to the following mailing address by _____, 20__:

For failure to provide records and/or appear for testimony, you may be deemed guilty of contempt and liable to penalties under the law.

Date: _____                    _____
                                          COMMISSIONER